UNITED STATES BANKRUPTCY COURT  **FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                                  :
                                                        :   Chapter 11
MUSICLAND HOLDING CORP., et al.,                        :   Case No. 06-10064(SMB)
                                                        :   Jointly Administered
                    Debtor.                             :
-------------------------------------------------------X

### MEMORANDUM DECISION GRANTING RECONSIDERATION, AND DENYING LEAVE TO FILE LATE PROOF OF CLAIM

**A P P E A R A N C E S:**

SIRLIN GALLOGLY & LESSOR, P.C.
Attorneys for KR Livonia, LLC
1529 Walnut Street, Suite 600
Philadelphia, Pennsylvania 19102

    Dana S. Plon, Esq.
        Of Counsel


HAHN & HESSEN LLP
Attorneys for Official Committee of
  Unsecured Creditors
488 Madison Avenue
New York, New York 10222

    Mark S. Indelicato, Esq.
    Mark T. Power, Esq.
    Janine M. Cerbone, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge**

      This matter calls for the application of the Pioneer[1] factors governing "excusable neglect" to a situation involving law office failure. KR Livonia, LLC ("Livonia"), a creditor, failed to file a proof of claim before the bar date under the circumstances described below. It moved for an extension of time to file a late claim, I denied the motion, and Livonia now seeks reargument

---

[1] See Pioneer Inv. Servs. Co. v. Brunswick Ass'n. Ltd. P'ship, 507 U.S. 380 (1993).

(and a different result). Although reargument is granted, the result is the same, and accordingly, Livonia's motion to file a late claim is denied.

## BACKGROUND

At all relevant times, the debtors (collectively, "Musicland") were engaged in the retail sale of music, movies, games, and other entertainment-related goods. At the time that these chapter 11 cases were filed on January 12, 2006, Musicland operated 869 stores. Livonia owns a shopping center known as Builder Square in Livonia, Michigan. One of the debtors, Media Play, Inc., was a tenant of Livonia under a 20-year lease that terminated on March 31, 2007.

On February 1, 2006, the Court signed two orders that bear on the pending motion. First, Musicland was authorized to reject numerous unexpired leases, including Media Play's lease with Livonia (the "Rejection Order"). (ECF Doc. # 349, Sched. P).[2] Second, the Court signed the Order Establishing Deadline for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof, dated Feb. 1, 2006) (the "Bar Date Order"). (ECF Doc. # 343.) The Bar Date Order set the filing deadline for May 1, 2006. It covered Livonia's claim for rejection damages, and Livonia received notice of the Bar Date and understood its import. Livonia nevertheless failed to file a timely claim.

### A.     The Original Motion

Livonia made the Original Motion, and sought leave to file a rejection damage claim in the sum of $753,253.69. According to the Original Motion, Livonia's counsel asked Livonia on

---

[2]     Schedule P to the Rejection Order listed a lease (No. 8188) in the Lincoln Mall in Livonia, Michigan. Livonia's original motion referred to the shopping center as the Builder Square, but the attachments to the proposed proof of claim, (see Motion of KR Livonia, LLC for Leave to File Late Proof of Claim, dated June 9, 2006, Ex. 3) ("Original Motion")(ECF Doc. # 980), show that the parties were referring to the same lease.

February 13, 2006, for the information needed to prepare the proof of claim. (Original Motion, ¶ 7.) Counsel promptly received the information, and prepared the proof of claim at that time. (Id.) The Original Motion did not explain why the proof of claim was not filed, and stated that "[u]pon subsequent review of the file, Movant's counsel discovered that the original Proof of Claim was in the file and had not been properly filed with the Court." (Id., ¶ 9.) The Official Committee of Unsecured Creditors (the "Committee") opposed the Original Motion on the ground that Livonia had failed to demonstrate "excusable neglect" as required under Pioneer. (See Objection of Official Committee of Unsecured Creditors to Motion of KR Livonia, LLC for Leave to File Late Proof of Claim, July 14, 2006, at ¶¶ 8-12)(ECF Doc. # 1046.)

The motion was placed on the Court's September 12, 2006 calendar. According to the Agenda filed by Musicland the previous day, (see ECF Doc. # 1151), the hearing on the motion was going forward. However, when the matter was called, Livonia did not appear. (Transcript of hearing, held Sept. 12, 2006, at 24)(ECF Doc. # 1288.) After first reserving decision, I denied the Original Motion from the bench for two reasons. First, Livonia failed to appear; second, it failed to offer a legitimate justification for the tardy claim, as required under In re Enron Corp., 419 F.3d 115 (2d Cir. 2005). (Id., at 24-25.) On September 22, 2006, the Court signed an order denying the Original Motion "for the reasons set forth" on the record. (ECF Doc. # 1175.)

**B.    Reconsideration Motion**

Livonia filed the instant motion (the "Reconsideration Motion") on September 29, 2006. (ECF Doc. # 1187.) The Reconsideration Motion, supported by the affidavit of Dana S. Plon, sworn to Sept. 29, 2006 ("Second Plon Affidavit"), indicated that Livonia's counsel did not appear on September 12th as the result of a mix up. Prior to that date, Livonia's counsel called

3

my law clerk, told her that she was unavailable on September 12th, and my law clerk advised Livonia's counsel that the motion could be carried to any future hearing date. (Second Plon Affidavit, at ¶¶ 8-10.) According to Livonia's counsel, my law clerk said she would mark the matter "continued to undetermined date," and advised Livonia's counsel to call on or after September 12th for a new hearing date. (See id., at ¶ 10.) Consequently, Livonia's counsel did not show up at the hearing.

The Reconsideration Motion also attached another Affidavit of Dana S. Plon, sworn July 21, 2006 ("First Plon Affidavit"), which amplified the reasons for the failure to file a timely proof of claim. After receiving the Bar Date Order, Livonia's counsel asked the Collection Manager for Livonia's managing agent to prepare an accounting of the pre-petition and rejection damages. (First Plon Affidavit, ¶ 2.) She received the accounting on March 24th, (id., at ¶ 3), prepared the proof of claim on that same day, and gave both the proof of claim and the attachments "to the appropriate administrative personnel with instructions to file." (Id., at ¶ 4.) Livonia's counsel reviewed the file in early June 2006, and discovered that the proof of claim that she had prepared was still in the file, and had not been filed with the Court. (Id., at ¶ 6.) She concluded that "[t]here was apparently a miscommunication between my staff and me, which caused the Proof of Claim not to be filed." (Id., at ¶ 7.) The Committee opposed the motion, contending that reconsideration was not appropriate, but if it was, Livonia had again failed to show "excusable neglect." (See Objection of the Official Committee of Unsecured Creditors to the Motion of KR Livonia, LCC for Reconsideration of the Order Denying the Motion of KR Livonia, LLC for Leave to File Late Proof of Claim, dated Oct. 19, 2006, at ¶¶ 5-6)(ECF Doc. # 1233.)

**DISCUSSION**

**A.     Reargument**

It appears that Livonia's counsel failed to attend the September 12th hearing under the belief, perhaps mistaken, that she and the Committee had agreed to an adjournment. The Agenda filed the previous day, which counsel received electronically, showed that the matter was going forward. She nonetheless failed to investigate or clarify the contradiction with the Committee. On the other hand, the Committee has not disputed the suggestion that the matter was supposed to be adjourned. (ECF Doc. #1151, ¶6.) Under the circumstances, reargument will be granted to give Livonia the opportunity to amplify the record and make the arguments it could have made on September 12th.[3]

**B.     Excusable Neglect**

The Federal Bankruptcy Rules direct a bankruptcy court to establish bar dates in chapter 11 cases. FED. R. BANKR. P. 3003(c)(3) requires the bankruptcy court to "fix and for cause shown may extend the time within which proofs of claim or interest may be filed." The bar date is critically important to the administration of a successful chapter 11 case, and the reorganization process:

> A bar order serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization.... Thus, a bar order does not "function merely as a procedural gauntlet," ... but as an integral part of the reorganization process.

---

[3] The Court took this motion on submission. Livonia's counsel advised the Court that she was due to give birth at the end of November. Her office was in Philadelphia, she could not travel to New York for medical reasons, and did not want to argue the motion telephonically. She asked the Court to adjourn the motion until February 2007, when she planned to return from maternity leave. Rather than adjourn the matter for that long, the Court chose to dispense with oral argument entirely. (See ECF Doc. # 1263.)

First Fidelity Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.), 937 F.2d 833, 840 (2d Cir. 1991) (citing United States v. Kolstad (In re Kolstad), 928 F.2d 171, 173 (5th Cir. 1991)); accord In re Keene Corp., 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995); Maxwell Macmillan Realization Liquidating Trust & MCC GAO, Inc. v. Aboff (In re Macmillan), 186 B.R. 35, 48-49 (Bankr. S.D.N.Y. 1995). The bar date is akin to a statute of limitations, and must be strictly observed. In re Macmillan, 186 B.R. at 49; In re Drexel Burnham Lambert Group, Inc., 129 B.R. 22, 24 (Bankr. S.D.N.Y. 1991).

A creditor may nevertheless file a late claim if the failure to file a timely claim was due to "excusable neglect". FED. R. BANKR. P. 9006(b)(1). The burden of proving "excusable neglect" rests on the late-claimant. Enron, 419 F.3d at 121 (quoting Jones v. Chemetron Corp., 212 F.3d 199, 205 (3d Cir. 2000)). In Pioneer, the Court expanded the definition of "excusable neglect" to include, where appropriate, "inadvertence, mistake, or carelessness." 507 U.S. at 388. Ultimately, the Court stated, the determination whether to allow a late claim is an equitable one that takes account of all of the surrounding circumstances:

> These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Id. at 395. [4]

---

[4] Pioneer dealt with the meaning of "excusable neglect" under FED. R. BANKR. P. 9006(b)(1). The phrase "excusable neglect" appears in other federal rules, including FED. R. CIV. P. 6(b) and 60(b)(1), and FED. R. APP. P. 4(a)(5). The Pioneer Court's discussion of "excusable neglect" was not limited to FED. R. BANKR. P. 9006(b)(1), and applies generally to these rules as well. United States v. Torres, 372 F.3d 1159, 1162 (10th Cir. 2004); see Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248 (2d Cir. 1997)(applying Pioneer to FED. R. CIV. P. 60(b)(1)); Weinstock v. Cleary, Gottlieb, Steen & Hamilton, 16 F.3d 501, 503 (2d Cir. 1994)(applying Pioneer to FED. R. APP. P. 4(a)(5)).

The Pioneer factors, though several, are not accorded equal weight. Typically, "the length of the delay, the danger of prejudice, and the movant's good faith 'usually weigh in favor of the party seeking the extension.'" Enron, 419 F.3d at 122 (quoting Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366 (2d Cir 2003), cert. denied, 540 U.S. 1105 (2004)). Consequently, the Second Circuit, as well as other Circuits, focus on the third factor – the reason for the delay – as the predominant factor. Williams v. KFC Nat'l Mgmt. Co., 391 F.3d 411, 415-416 (2d Cir. 2004); see United States v. Torres, 372 F.3d 1159, 1163 (10th Cir. 2004)("fault in the delay… [is] perhaps the most important single factor in determining whether neglect is excusable"); Silivanch, 333 F.3d at 366 ("we and other circuits have focused on the third factor: 'the reason for the delay, including whether it was within the reasonable control of the movant.'")(quoting Pioneer, 507 U.S. at 395); Graphic Commc'ns Int'l Union Local 12-N v. Quebecor Printing Providence, Inc., 270 F.3d 1, 5 (1st Cir. 2001)(reason for delay always a critical factor); Chanute v. Williams Natural Gas Co., 31 F.3d 1041, 1046 (8th Cir. 1994); see In re Kmart Corp., 381 F.3d 709, 715 (7th Cir. 2004)(noting rule in several sister circuits that "fault in the delay is the preeminent factor"). The other factors are relevant only in close cases. Williams v. KFC Nat'l Mgmt. Co., 391 F.3d at 415-16.

If a clear deadline is missed due to a law office failure, including inattention or lack of oversight, an extension is not justified. Enron, 419 F.3d at 123 ("[T]he equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule,' and . . . 'where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary case, lose under the Pioneer test.'")(quoting Silivanch, 333 F.3d at 366-67); accord Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d at 250-51. Kmart, 381 F.3d 709, which presents a strikingly similar fact pattern to Livonia's case, is instructive. There, the creditor's attorney, who

was aware of the bar date, delegated the filing of the proof of claim to an office clerk only one day before the deadline. The clerk was apparently instructed to send the claim by overnight mail. Instead, he went to the post office late in the day, and either because of his oversight or the post office's inability to ensure next day delivery, the clerk checked the box for "Second Day Delivery." The proof of claim arrived one day later than the creditor or her counsel had intended, and one day after the bar date. Id. at 712.

The attorney also failed to take the "simple steps" available to confirm that the claim had been filed on time. For example, the claim form recommended that claimants include a self-addressed, stamped envelope so that the claims agent could mail back a verification of receipt, but the creditor's attorney failed to do so. Furthermore, the attorney failed to follow up with phone calls to confirm that the claim had been filed, and did not learn about the late filing until KMart sent notice that the claim was barred. Id.

The bankruptcy court denied the creditor's motion to deem the claim timely filed, and the district court and the court of appeals affirmed. The Seventh Circuit concluded that the delay was entirely the fault of creditor's counsel. Counsel left the filing to the last minute, delegated the mailing responsibility to an office clerk, failed to follow up with the clerk to ensure that he had followed the attorney's instructions, and failed to take simple steps to confirm that the claim had been filed in a timely manner. Id. at 715. As Kmart shows, neglect is not excusable where the party knows the filing deadline, but fails to file in time due to lack of oversight or inattention. Accord Pruitt v. Metcalf & Eddy Inc., No. 03 Civ. 4780(DF), 2006 WL 760279, at *2 (S.D.N.Y. Mar. 24, 2006) (no "excusable neglect" where attorney misplaced notice of appeal after

arranging for attorney service to pick up and file it, and then failed to follow up with attorney service to determine if the notice of appeal had been picked up and filed).

Here, Livonia failed to satisfy its burden of showing that its admitted neglect was excusable. Rather, the undisputed evidence demonstrates that it was not. Livonia and its counsel were aware of the bar date, and prepared a proof of claim for filing before the deadline. As in Kmart, counsel delegated the actual mailing of the proof of claim to "appropriate administrative personnel," a class of employees that presumably includes non-lawyers at the firm. The claim was never sent, and we still don't know why.

In addition, there is no evidence that counsel took any of the several available steps to confirm the filing of the claim. The Bar Date Order required the proof of claim to conform substantially to Official Form No. 10, and paragraph 10 of the Official Form states: "To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim." Indeed, Livonia's proposed proof of claim contains the same language. Yet there is no proof that Livonia took this step, or if it did, that counsel checked to see if the copy had been returned. Moreover, counsel apparently made no follow-up calls. Finally, copies of all filed claims are easily accessed through the "Claims Register" available through the Court's Electronic Case Filing system, but counsel apparently never checked.[5]

Here, the reason for the delay in filing was the result of attorney inattention and lack of supervision. Accordingly, Livonia has failed to demonstrate excusable neglect. Thus,

---

[5] While counsel did not wait until the last minute to file the claim, this simply means that she had much more time to check whether the claim had been filed.

reargument is granted, but upon reargument, the Court adheres to its earlier decision denying Livonia's motion.  Settle an order on notice.

Dated: New York, New York
December 8, 2006

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
Chief United States Bankruptcy Judge